## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**LATEISHA MOORE**                                                    **PLAINTIFF**

**v.**                                **4:05CV01851-WRW**

**CINGULAR WIRELESS**                                                 **DEFENDANT**

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 64). Plaintiff has responded (Doc. No. 70) and Defendant has replied (Doc. No. 72). Plaintiff brings her cause of action under Title VII of the Civil Rights Acts of 1964.[1]

Plaintiff asserts that Defendant subjected her to disparate treatment based on race and disability by failing to promote her. Plaintiff further asserts that Defendant terminated her employment in retaliation of her filing an EEOC Charge of Discrimination.

For the reasons set forth below, Defendant's Motion for Summary Judgement is GRANTED.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[2] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial --

---

[1]42 U.S.C. § 2000(e).

[2]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

1

whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[3]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[4]   Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[5]   I must view the facts in the light most favorable to the party opposing the motion.[6]   The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

---

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[4]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[5]*Id.* at 728.

[6]*Id.* at 727-28.

[7]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted).

[8]*Anderson*, 477 U.S. at 248.

2

## II. BACKGROUND

Defendant Cingular Wireless ("Cingular") employed Plaintiff Lateisha Moore, an African American, as a Customer Service Representative ("CSR") from September, 2001, through September, 2005.[9]  As a CSR, Plaintiff answered customer calls about telephone service, bills, and other technical issues.[10]  While employed by Cingular, Plaintiff applied for over 50 different positions within the company.[11] Cingular selected Plaintiff for two lateral transfers.[12] Plaintiff alleges disparate treatment based on race and disability in not being selected for seven positions, all in the Little Rock call center.[13]  Of those seven positions, six would have been lateral transfers.[14]  Of the six lateral transfers, four would have been into other CSR positions.[15]  Of the six lateral transfers, only one could have potentially resulted in higher income because of a

---

[9]Doc. Nos. 66 and 70.

[10]Doc. No. 64, Ex. 5.

[11]Doc. Nos. 66 and 70.

[12]*Id.*

[13]*Id.* Plaintiff acknowledges that the 180-day statute of limitations has expired with respect to any claims involving rejections in an additional five positions: Customer Care Manager-24475;  Retail Sales Consultant-46004;  Customer Care Manager-23503;  Clerical Manager-22767; and  Retail Store-Sales Rep-38452.  In addition, Plaintiff in a deposition stated that she did not feel discriminated against in connection with not being selected for any of the out-of-state positions for which she applied. Doc. No. 64, Ex. 5.

[14]Doc. Nos. 66 and 70.

[15]*Id.* The other lateral positions for which Plaintiff applied were Administrative Assistant and Retail Sales Consultant.

commission structure.[16] Only one position for which Plaintiff applied, Corporate Account

Executive II, would have been considered a promotion.[17]

Plaintiff suffered from occasional migraines that caused her to feel dizzy and nauseous.[18]

When Plaintiff has migraines, lights and the computer screen hurt her eyes, she sometimes

vomits, and is required to lay down.[19] Plaintiff had reported to work with migraines, but often

requested to leave when suffering from one.[20] Plaintiff was on short-term disability several times

during her employment: September 24, 2002 - December 2, 2002; May 21, 2003 - June 9, 2003;

April 4, 2005 - May 23, 2005; and July 18, 2005 - September 1, 2005.[21]  In early September,

2005, Plaintiff received a letter from Broadspire,  the company that administered Cingular's

short-term disability plan, informing her that her short-term disability benefits were denied and

that she should coordinate her return to work by the middle of September.[22]  The letter also stated

that Plaintiff could appeal the denial of her benefits.[23]

---

[16]Doc. 64, Ex. 6. The one position was Retail Store-Sales Consultant.

[17]Doc. Nos. 66 and 70.

[18]Doc. No. 64, Ex. 5.

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]*Id.*

Plaintiff called Broadspire to request an appeals form, but never received the form.[24]
Plaintiff never submitted any type of written document to Broadspire to inform them of her
decision to appeal the denial of her benefits, and she never contacted Cingular to coordinate her
return to work or to inform Cingular that she was going to appeal the denial of her benefits.[25]
Plaintiff last reported to work on July 11, 2005.[26]  She was on an approved short-term leave until
September 1, 2005.[27]  After September 1, 2005, Plaintiff was absent from work without being on
an approved leave.[28]  Cingular terminated Plaintiff employment on September 28, 2005.[29]

On August 29, 2005, Plaintiff filed an EEOC Charge of Discrimination[30] (the "First
Charge") alleging that Cingular did not transfer or promote her based on her race and because of a
disability.[31]  On September 8, 2005, the EEOC issued Plaintiff a right to sue letter in connection

---

[24]Doc. No. 64, Ex. 5

[25]*Id.*

[26]*Id.*

[27]Doc. No. 64, Ex. 9.

[28]Doc. No. 70.

[29]*Id.*

[30]Charge No. 251-2005-02295

[31]Doc. No. 2. The First Charge reads:
I was hired on September 17, 2001, as a Customer Service Representative. Throughout the term
of my employment, I have applied for transfers and promotions. I have not been given a transfer
or promotion. In June 2005, I applied for transfer to a position in the President's Office and
Special Operations. I was not offered either position. In June 2005, I applied for a promotion to
the position of Retail Sales Consultant and Business Account Executive. I was not offered either
position. I have not been given a reason as to why I have not been offered a transfer or
promotion.

with the First Charge.[32]  Plaintiff filed another EEOC Charge of Discrimination[33] (the "Second Charge") on November 17, 2005, alleging that she was not promoted due to her race and disability, and that Cingular terminated her employment in retaliation of her filing an EEOC charge.[34] On April 27, 2006, the EEOC issued a right-to-sue letter for the Second Charge.[35]

On December 7, 2005, Plaintiff filed a *pro se* complaint alleging that Cingular discriminated against her based on race and color by not promoting her and by terminating her employment.[36] The complaint reads:

> I Lateisha Moore was never promoted within the organization. I started applying for jobs which I was denied and never promoted, or given a reason why I couldn't advance with the organization. After being denied promotions for three year I took my documents to the EEOC which I was granted the right to sue.[37]

Plaintiff attached to her complaint a copy of the First Charge and the corresponding right-

---

[32]*Id.*

[33]Charge No. 251-2006-00414

[34]Doc. No. 66. The Second Charge reads:
I was hired in September 2001 in Customer Service. In July 2005, I went on disability. My disability claim was not approved; however, I was denied the opportunity to appeal the decision because I never received any paper work. In August 2005, I filed a previous EEOC charge 251-2005-02295 because I was denied a promotion based my race and disability. I received a right to sue letter around September 8, 2005. On September 28, 2005, I received a letter of termination from Human Resources.
The letter of termination indicated that I was terminated because of job abandonment.
I believe I was discriminated against because of my race, Black, and retaliated against for filing a previous EEOC charge, in violation of Title VII, and my disability, in violation of the Americans With Disabilities Act of 1990, as amended.

[35]Doc. No. 64, Ex. 11.

[36]Doc. No. 2.

[37]*Id.*

to-sue letter.[38] Plaintiff neither referenced the Second Charge in her complaint, attached a copy of the Second Charge and right-to-sue letter to the complaint, nor amended her complaint to include the Second Charge.[39]

## III. DISCUSSION

### A. The *McDonnell Douglas* Burden-Shifting Framework

When a plaintiff's Title VII claims of discrimination are based on indirect evidence, the claims must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[40]  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.[41]  Once the plaintiff meets this initial threshold, a presumption arises that the employer "unlawfully discriminated against the employee."[42]  The burden of production then shifts to the employer, who must show some legitimate, nondiscriminatory reason for the employment decision.[43]

Within the *McDonnell Douglas* framework, the court is not required to assess the

---

[38]*Id.*

[39]*Id.*

[40]411 U.S. 792 (1973).

[41]*Id.*

[42]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[43]*McDonnell Douglas*, 411 U.S. at 802.

credibility of the defendant's explanation of his actions.[44]  Once the defendant articulates a

"legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie*

case of discrimination is rebutted and "drops from the case."[45]   At all times in this analysis, the

ultimate burden of production remains with the plaintiff,[46] and once the defendant has met its

burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reason for

 [the employment decision] was in fact pretext,"[47] or that the proffered reasons for the employer's

action were not true.[48]

### i.  The Failure to Promote Claim

 A plaintiff alleging disparate treatment based on race in a failure-to-promote case must

establish a *prima facie* case of discrimination by proving (1) that she is a member of a protected

class; (2) that she was qualified and applied for a promotion to an available position; (3) that she

was rejected; and (4) that the employer instead promoted a similarly situated employee who was

not part of the protected group.[49]  At the *prima facie* stage, the plaintiffs' burden of showing that

she is similarly situated to other job applicants is "not onerous."[50]  Employees applying for

---

[44]*St. Mary's Honor*, 509 U.S. at 509 (1993).

[45]*Id.* at 507.

[46]*Id.*

[47]*McDonnell Douglas*, 411 U.S. at 804.

[48]*St. Mary's Honor*, 509 U.S. at 508.

[49]*Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996).

[50]*Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir.1994)).

promotions are similarly situated where they meet the minimum qualifications for the position.[51]

"Whether the applicants' experience and qualifications were in fact a legitimate basis for the

[employer's] decision is more relevant to the issue of pretext than the Plaintiff's *prima facie*

burden."[52]

Based on the facts in the record, there is only one position for which the Plaintiff applied

that would have been considered a promotion -- the position of Corporate Account Executive II.

It is undisputed that Plaintiff is a member of a protected class -- she is African American. It is also

undisputed that Plaintiff applied for the position. Examined in the light most favorable to the

non-moving party, there is no evidence in the record showing that the Plaintiff was un-qualified

for the position. However, there is nothing in the record indicating that a member of a non-

protected class was selected for the position rather than the Plaintiff. Because the race of the

selected applicant is unknown, there is no evidence in the record showing Cingular's unlawful

discrimination in not selecting Plaintiff. Plaintiff has not established a *prima facie* case of

discrimination.

Even if Plaintiff had established a *prima facie* case, Cingular articulated a "legitimate,

non-discriminatory" reason for not selecting Plaintiff for the position of Corporate Account

Executive II -- she was not the most qualified applicant for the position. Because Cingular could

provide a legitimate explanation, the burden shifts back to Plaintiff to show that the reason

articulated by Cingular is a pretext for discrimination. Plaintiff has not offered any evidence to

---

[51]*Peterson v.  Scott County,* 406 F.3d 515, 523 (8th Cir. 2005) (citing *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 757 (8th Cir. 2003)).

[52]*Id.*

rebut Cingular's claim of a legitimate and non-discriminatory action. Plaintiff again has not met her burden.

Because Plaintiff has not established a *prima facie* case of discrimination, Cingular's Motion for Summary Judgment is granted with respect to failure to promote based on racial discrimination.

### ii. <u>The Failure to Transfer Claim</u>

To establish a *prima facie* case of discrimination in connection with a failure to transfer, the Plaintiff must show that she: (1) is a member of a protected class; (2) is qualified for the position; (3) suffered an adverse employment action; and (4) that there was a causal relationship between the two.[53]  Adverse employment action is so critical to the claim that summary judgment is appropriate if the plaintiff fails to provide sufficient facts demonstrating that she suffered an adverse employment action.[54] "Not every setback amounts to an adverse employment action."[55] An adverse employment action is a "tangible change in duties or working conditions that constitutes a *material employment disadvantage*"[56] or a "material change in the terms or conditions of her employment."[57]  In determining whether a plaintiff suffered a material employment disadvantage, the Eighth Circuit has looked to factors such as if there was a

---

[53]See *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259 (8th Cir. 1996).

[54]*Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005).

[55]*Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006) (no adverse employment found where management gave Plaintiff three written reprimands, because Plaintiff could not point to a cut in pay, reduction in hours, or any other significant change to the conditions of employment).

[56]*Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (emphasis added).

[57]*Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

reduction in title, in benefits, or in salary.[58]

Plaintiff must show an adverse employment action in not being selected for six lateral transfer positions. With respect to pay, only one of the positions, Retail Store Sales Consultant, could have potentially resulted in more income for the Plaintiff, because of a commission structure. With respect to benefits, there is no evidence that Plaintiff would have received a higher level of benefits had she been selected for any of the positions. The duties associated with the four other CSR positions included the same type of duties -- customer service related activities -- Plaintiff was already responsible for. The duties associated with the other two positions would have varied, but the other conditions of Plaintiff's employment would have remained the same. Because there was no material employment disadvantage, Plaintiff can not establish an adverse employment action in not being selected for the lateral transfers. Accordingly, Plaintiff has failed to establish a *prima facie* case of discrimination.

### iii. The Retaliation Claim

A Title VII Plaintiff must exhaust administrative remedies before bringing suit in federal court.[59]  A plaintiff may file a civil action only after the EEOC issues a right-to-sue letter following the investigation of a charge.[60]  When the EEOC issues a right-to-sue letter, the scope of the civil action is limited to grievances in the charge.[61]  Permitting claims that are outside of the

---

[58]See *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (no adverse employment action where a secretary's reassignment without a reduction in pay, benefits, or title, even though new position was more stressful and encompassed fewer duties).

[59]42 U.S.C. § 2000(e)-5(f)(1).

[60]*Id.*

[61]*Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998).

EEOC charge would undermine the EEOC's investigatory and conciliatory role, and deprive the charged party of notice.[62] The United States Supreme Court, however, has noted in an EEOC-related case that technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiated the process.[63]

To establish a *prima facie* case of retaliation, a Plaintiff in a Title VII case must show each of the following elements: "(1) he was engaged in statutorily protected activity, (2) he suffered adverse employment action, and (3) a causal connection between the two exists."[64]  The Eighth Circuit has held that a plaintiff failed to establish the first element where the plaintiff's behavior was bizarre or disruptive to the operation of the defendant's business.[65]

Plaintiff failed to exhaust administrative remedies with respect to her retaliation claim. She included allegations of wrongful termination in her complaint on December 7, 2005, before having been issued a right-to-sue letter on that charge; Plaintiff received her right-to-sue letter in connection with her Second Charge only on April 27, 2006.  Plaintiff's civil action in connection with her termination was premature.  However, in keeping with the spirit of the law in protecting *pro se* plaintiffs in EEOC-related cases from defeat based solely on technicalities, I will analyze Plaintiff's retaliation claim.

---

[62]*Kells v. Sinclair Buick-GMC Truck, Inc*., 210 F.3d 827, 836 (8th Cir. 2000); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994).

[63]*Love v. Pullman Co*., 404 U.S. 522, 527 (1972).

[64]*Jackson v. St. Joseph Hospital*, 840 F.2d 1387, 1390 (8th Cir. 1988) (citing *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980)).

[65]See *Jackson v. St. Joseph State Hospital*, 840 F.2d 1387 (8th Cir. 1988), *Garrett v. Mobil Oil Corp*., 531 F.2d 892 (8th Cir. 1976). See also *EEOC v. Shoney's Inc*., 536 F. Supp. 875 (N.D. Ala. 1982) (employee's complaints that his girlfriend had been fired when the girlfriends of other managers had not did not constitute protected activity).

Plaintiff last reported to work on July 18, 2005.  She was on approved short-term leave until September 1, 2005.  Plaintiff was absent from work while not on an approved leave from September 1, 2005, onward. Plaintiff never contacted Cingular to coordinate her return to work, nor did she alert Cingular that she was attempting to appeal the denial of her short-term disability benefits. Beyond telephone calls to request an appeals form, Plaintiff never submitted to Broadspire any writing to alert the company that she planned to appeal or otherwise to initiate the appeal. Cingular's knowledge was limited to the facts that the Plaintiff was not at work, had not contacted Cingular, had not coordinated a return to work, had not filed an appeal of the denial of her benefits, and had been absent and not on an approved leave since September 1, 2005. Cingular terminated Plaintiff's employment on September 28, 2005.

As set out in the return-to-work letter, it was Plaintiff's responsibility to contact Cingular; Plaintiff admittedly never did so. Plaintiff's failure to contact Cingular and her absence from work while not on an approved leave does not constitute protected behavior. Plaintiff fails to meet the first element in establishing a *prima facie* case of discrimination. Even if Plaintiff had established a *prima facie* case, Cingular made a legitimate business decision in dismissing an employee who had been absent and not on approved leave for approximately 27 days, and who had not contacted Cingular with respect to her further employment. Because Plaintiff failed to establish a *prima facie* case of discrimination, Defendant's Motion for Summary Judgment is granted with respect to retaliation.

### iv. The Disability Claim

The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating

13

against an employee "because of the disability of such individual."[66]  To establish a *prima facie* case of discrimination in an ADA claim, a plaintiff must show that she: "(1) is disabled within the meaning of the ADA; (2) is qualified (with or without reasonable accommodation) to perform the essential functions of the job at issue; and (3) has suffered adverse employment action under circumstances giving rise to an inference of unlawful discrimination."[67]

Under the ADA, a disability is an "impairment that substantially limits one or more of the major life activities of such individual."[68]  Major life activities are "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[69] The major life activity of working is substantially limited when an individual is "significantly restricted in the ability to perform either a class of jobs or broad range of jobs. . . ."[70]  Determining if an individual suffers from a disability under the ADA is an "individualized inquiry."[71] Simply suffering from an impairment does not make one disabled.[72]

Plaintiff suffers from periodic migraines and identifies the migraines as her disability. While suffering from a migraine, Plaintiff is required to lie down, light hurts her eyes, and she sometimes vomits. When not suffering from a migraine, Plaintiff is not affected by the condition.

---

[66]42 U.S.C. § 12112(a).

[67]*Land v. Washington*, 243 F.3d 1093, 1095 (8th Cir. 2001).

[68]29 C.F.R.§ 1630.2(g)(1).

[69]29 C.F.R.§ 1630.2(i).

[70]29 CFR § 1630.2(j)(3)(i).

[71]*Sutton v. United Air Lines, Inc*., 527 U.S. 471, 483 (1999).

[72]See *Toyota Motor Mfg., Kentucky Inc. v. Williams*, 534 U.S. 184 (2002).

Plaintiff has reported to work while having a migraine, but often asked to leave when suffering from one. In suffering from occasional migraines, Plaintiff is not restricted in her ability to perform a class of jobs or a broad range of jobs. She is not continuously restricted from speaking with clients on various customer service issues as her position required. Plaintiff is not substantially limited in a major life activity and I find that Plaintiff's migraines do not constitute a disability under the ADA. Because Plaintiff does not suffer from a disability under the ADA, her *prima facie* case of discrimination fails.

## CONCLUSION

Based on the findings of fact and conclusions of law above:

1. Plaintiff did not establish a *prima facie* case of race discrimination in connection with her failure to promote claim because there is no evidence that Cingular unlawfully hired a member of a non-protected class rather than Plaintiff;

2. Plaintiff did not establish a *prima facie* case of race discrimination in connection with her failure to transfer claim because there is no evidence of an adverse employment action in connection with Plaintiff not being selected;

3. Plaintiff did not exhaust administrative remedies with respect to her retaliation claim. Further, Plaintiff failed to establish a *prima facie* case of retaliation because she was not engaged in protected activity at the time her employment was terminated.

4. Plaintiff failed to establish a *prima facie* case of discrimination based on disability because Plaintiff's migraines do not constitute a disability under the ADA.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED.

IT IS SO ORDERED this 27th day of September, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE